DECISION AND JUDGMENT ENTRY
William O'Brien appeals his convictions by the Hocking County Court of Common Pleas for two counts of gross sexual imposition in violation of R.C. 2907.05(A)(1), and one count of corruption of a minor in violation of R.C. 2907.04(A).[2] He argues that these convictions are not supported by sufficient evidence. Because we find that a rational trier of fact viewing the evidence in the light most favorable to the prosecution could have found the essential elements of gross sexual imposition and corruption of a minor proven beyond a reasonable doubt, we disagree. Accordingly, we affirm the judgment of the trial court.
 I.
In September 2000, a grand jury indicted O'Brien. There were five counts in the indictment: (1) gross sexual imposition in violation of R.C. 2907.05(A)(4); (2) gross sexual imposition in violation of R.C.2907.05(A)(1); (3) gross sexual imposition in violation of R.C.2907.05(A)(4); (4) gross sexual imposition in violation of R.C.2907.05(A)(1); and (5) corruption of a minor in violation of R.C.2907.04(A).
At trial, the state's opening statement indicated that Count I took place between April and May 1995 to Victim A,[3] Count II took place between July and December 1998 to Victim B, Count III took place in 1995 to victim B, Count IV took place in June 1998 to Victim A and Count V took place in May or June 1998. The state did not identify which victim Count V related to, however the judge instructed the jury at the close of the case that Count V related to Victim A.
At trial, the parties stipulated that Victim A was born in March 1985, Victim B was born in March 1984, and O'Brien was born in March 1965.
Victim A testified that O'Brien is her uncle. She testified that in April or May of 1995, when she was ten years old, O'Brien began to grab her breast and vagina and anally penetrate her with his penis. The abuse took place while he was baby-sitting her and her sister, Victim B. She testified that this took place at O'Brien's residence, in Hocking County, two to three times a week until May or June of 1998. She explained that O'Brien threatened to kill her if she told anyone and that he threatened her throughout the period of abuse. According to Victim A, she first talked about this abuse with her aunt, with whom she lived, in May of 2000.
Victim B testified that in 1995, O'Brien put his penis into her vagina and touched her breasts and threatened to kill her if she told anyone. The state asked her several questions about "these incidents" and then asked her, "Now from July of `97 to March of `98 we have alleged that this happened often times. Do you have any idea how many times?" Victim B replied, "No, I don't. It was too many." She also testified that these incidents happened in Hocking County.
At the close of the state's case, O'Brien moved for a Crim.R. 29 judgment of acquittal, which the trial court denied.
Melinda O'Brien, O'Brien's sister-in-law, testified that she continued to allow her own children to spend time with O'Brien even after she learned that he was having no contact with victims A and B due to their allegations of sexual misconduct. Melinda O'Brien testified to an incident of untruthfulness by the victims with regard to whether they were using a swing-set after they had been told not to do so. She also testified that the victims did not seem afraid of O'Brien and had even volunteered to accompany him on errands.
O'Brien testified that he and his family had helped Victim A and Victim B's family move when Victim A was twelve or thirteen years old. He testified that while he was moving her bed, he found a dildo under the bed.
He denied ever doing the things that the victims accused him of doing. He theorized that they made the accusations to get back at him for "making them mind" when he babysat them. He also testified that he had not been to the victims' house in the past year.
On rebuttal, Debra Lehman, the victims' aunt, testified that O'Brien had been to her house, the house where the victims lived, at least ten times during the past year. She testified that Victim A avoided him during these visits.
The jury found O'Brien guilty of all counts. O'Brien moved for a Crim.R. 29(C) judgment of acquittal, which the trial court denied. The trial court sentenced him to a total of eight years in prison. O'Brien appealed. His court-appointed attorney filed a motion to withdraw and an Anders brief. O'Brien sought the appointment of the Office of the Ohio Public Defender to represent him. We granted both requests. In his merit brief, O'Brien asserts the following assignment of error:
The trial court erred when it denied the Criminal Rule 29(A) motion made at the conclusion of the state's case and overruled the Criminal Rule 29(C) motion for judgment of acquittal filed January 2, 2001, both in violation of William O'Brien's right to due process and a fair trial. * * *.
 II.
In his only assignment of error, O'Brien argues that his convictions on Counts II (gross sexual imposition against Victim B from July to December 1998), Count IV (gross sexual imposition against Victim A in June 1998), and Count V (corruption of a minor in 1998) are not supported by sufficient evidence. He asserts that the victims' testimony did not establish each specific act.
When we review the sufficiency of the evidence, we must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v. Virginia (1979),443 U.S. 307.
R.C. 2907.05(A) provides, in part:
 No person shall have sexual contact with another, not the spouse of the offender * * * when any of the following applies:
 The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.
R.C. 2907.04(A) provides, in part:
 No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.
R.C. 2907.01 provides, in part:
 As used in sections 2907.01 to 2907.37 of the Revised Code:
 "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
 "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.
We consider each count separately.
 A.
We first consider O'Brien's conviction for Count II, a charge of gross sexual imposition in violation of R.C. 2907.05(A)(1) as to Victim B between July and December 1998. Victim B testified that "this" happened between July 1997 and March 1998 too many times to keep track of. Although Victim B did not specifically state what she meant by "this", she did explain in detail what O'Brien had done to her in 1995, i.e., put his penis into her vagina and touch her breasts and threaten to kill her if she told anyone. The state then consistently referred to this behavior as "this" and "that" rather than eliciting details. While it is certainly preferable that a witness describe exactly what happened with regard to each count in an indictment, viewing Victim B's testimony in the light most favorable to the prosecution, we find that Victim B's testimony, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. After reviewing the entire exchange between Victim B and the state, it is clear that "this" referred to O'Brien putting his penis into Victim B's vagina and touching her breasts. This activity fits within the definition of "sexual contact." Thus, O'Brien's conviction for Count II of the indictment is supported by sufficient evidence.
 B.
We next consider O'Brien's conviction for Count IV, gross sexual imposition in violation of R.C. 2907.05(A)(1) against Victim A in June 1998. Victim A testified that beginning in 1995 and ending when she was thirteen, O'Brien anally penetrated her with his penis, fondled her breasts, and touched her vagina. She explained that May or June 1998 was about the last time. She testified that O'Brien threatened to kill her if she told her parents. Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the state proved that O'Brien had sexual contact with Victim A in June 1998. Again, it is preferable for the state to elicit exactly what happened and when it happened, but the jury may draw reasonable inferences from the testimony. Thus, O'Brien's conviction for Count IV of the indictment is supported by sufficient evidence.
 C.
Lastly, we consider O'Brien's conviction for Count V of the indictment, corrupting a minor, Victim A, in violation of R.C. 2907.04(A) in 1998. Victim A testified that beginning in 1995 and ending when she was thirteen, O'Brien anally penetrated her with his penis, fondled her breasts, and touched her vagina. She explained that May or June 1998 was about the last time. She testified that O'Brien threatened to kill her if she told her parents. Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the state proved that O'Brien had sexual conduct, i.e., anal intercourse, with Victim A in June 1998, when he knew she was less than thirteen years of age. "Penetration, however slight, is sufficient to complete * * * anal intercourse." R.C. 2907.01(A). Thus, O'Brien's conviction for Count V of the indictment is supported by sufficient evidence.
 D.
In sum, we find that O'Brien's convictions for Counts II, IV, and V of the indictment are supported by sufficient evidence and overrule O'Brien's only assignment of error. Accordingly, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hocking County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. and Evans, J.: Concur in Judgment and Opinion.
[2] O'Brien does not appeal his convictions for two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4).
[3] In order to maintain the minor victims' privacy, we do not refer to them by name or give their exact birth dates.